NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

In re:                                   )   BAP No.   EC-11-1706-KiDJu
                                         )
DANA PAUL FOSTER and CHERYL              )   Bk. No.   11-17709-WRL
DEANN FOSTER,                            )
                                         )   Adv. No.  11-1252-WRL
                Debtors.                 )
_____         )
                                         )
DANA PAUL FOSTER; CHERYL                 )
DEANN FOSTER,                            )
                                         )
                Appellants,              )
                                         )
v.                                       )   **M E M O R A N D U M**[1]
                                         )
WILMA CLARICE SLIGAR,                    )
                                         )
                Appellee.                )
_____         )

Submitted Without Oral Argument
on October 19, 2012,[2]

Filed - December 14, 2012

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable W. Richard Lee, Bankruptcy Judge, Presiding

Appearances:    William L. Alexander, Esq. on brief for appellants;
                Benny D. Barco, Esq. of Pascuzzi, Moore & Stoker,
                APC on brief for appellee.

Before: KIRSCHER, DUNN, and JURY, Bankruptcy Judges.

_____

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

[2] On August 27, 2012, we issued an order making the parties' appearance at oral argument optional. Neither party appeared at oral argument on October 19, 2012. Therefore, this appeal is deemed submitted on the briefs and record provided.

Appellants, chapter 13[3] debtors Dana Paul Foster ("Dana") and Cheryl Deann Foster ("Cheryl")(collectively "Fosters"), appeal an order denying their motion to dismiss Wilma Clarise Sligar's ("Sligar") complaint for nondischargeability of debt and denial of discharge based on various tort claims, including fraud and elder abuse. The bankruptcy court further ordered that it was abstaining from hearing Sligar's tort claims against Fosters, that it was granting Sligar relief from the automatic stay to pursue her tort claims in state court, and that it was administratively closing the adversary proceeding. Because the bankruptcy court should have dismissed the complaint without prejudice, we VACATE in part and REMAND.

### I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**A. Events leading to the adversary complaint.**

The following facts are as alleged in Sligar's state court complaint and in her adversary complaint against Fosters. Cheryl is the third of three daughters of Sligar; Dana is Cheryl's husband and Sligar's son-in-law. Sligar currently lives with her second daughter, Betty Briscoe ("Briscoe"). Since September 2010, Briscoe has had power of attorney for Sligar under CAL. PROB. CODE § 4401 and is authorized to engage in many transactions on Sligar's behalf, including prosecuting and/or defending claims and litigation. Briscoe is not an attorney at law.

Shortly after Sligar's husband passed away and before Briscoe became Sligar's caretaker, Fosters cared for Sligar and assisted

---

[3] Unless specified otherwise, all chapter, code, and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. The Federal Rules of Civil Procedure are referred to as "Civil Rules."

her with her daily needs. Cheryl was named on at least one of Sligar's bank accounts to assist Sligar with payment of her monthly financial obligations. Sligar alleged that between 2007 and January 2010, Cheryl and/or Fosters made unauthorized withdrawals from Sligar's bank account, made unauthorized cash advances on Sligar's credit card, forged Sligar's signature on certain checks made payable to Sligar, and failed to pay some of Sligar's bills. Sligar further alleged that Fosters conspired to deceive her into signing a blank quitclaim deed conveying title to real property she owned in Florida to Cheryl, which Cheryl subsequently conveyed to Dana. Sligar asserted in her state court complaint that at no time during this nearly three year period was she physically or mentally unable to sign her own signature due to illness or any other reason. She further asserted that Cheryl did not have power of attorney, or conservatorship, or any legal authorization to sign Sligar's signature. Sligar alleged that Fosters fraudulently acquired from her approximately $660,000 in real and personal property.

In January 2010, Sligar contacted Kern County Adult Protection Services and the Kern County Sheriff's Office to investigate the allegations against Fosters. They investigated the matter, but the county ultimately decided not to prosecute any criminal charges against Fosters.

Based on the above conduct, in July 2010, Sligar, represented by counsel, sued Fosters civilly in state court alleging claims of financial elder abuse, fraud and conspiracy to defraud, constructive trust, unjust enrichment, and for an accounting. The matter was set for trial on August 8, 2011. However, the trial

-3-

was stayed once Fosters filed their chapter 13 bankruptcy case on July 7, 2011.

**B.    The adversary complaint and motion to dismiss.**

Sligar filed a proof of claim in Fosters' bankruptcy case for the alleged debt on August 9, 2011. The proof of claim was signed by Briscoe as attorney-in-fact for Sligar. No objections were filed.

Based on the above allegations, on October 4, 2011, Briscoe, as attorney-in-fact for Sligar, filed a complaint seeking to except Sligar's debt from discharge under §§ 523(a)(2)(A), (a)(2)(B), (a)(4) and (a)(6) and to deny Fosters' discharge under 727(a)(2), (a)(3)(A), (a)(4)(A), and (a)(4)(B). Although the complaint was signed by Briscoe as attorney-in-fact for Sligar, Sligar did sign the adversary complaint cover sheet. The caption on the adversary complaint shows Sligar as the pro se plaintiff and Fosters as defendants. All claims alleged in the complaint were for injuries to Sligar; Briscoe sought no personal relief in the matter.

On November 2, 2011, Fosters moved to dismiss the adversary complaint under Civil Rule 12(b)(1) (the "Motion to Dismiss"), contending the bankruptcy court lacked subject matter jurisdiction because Briscoe lacked standing to bring the adversary complaint on behalf of Sligar. Specifically, Fosters argued that, based on the unpublished case of <u>Lomax v. City of Antioch Police Officers</u>, 2011 WL 4345057 (N.D. Cal. Sept. 14, 2011), which Fosters argued was identical to the instant case, Briscoe, a non-attorney, lacked standing to file an action on behalf of Sligar, and her power of attorney for Sligar did not remedy the standing issue. Fosters

-4-

further argued that Sligar should not be allowed to amend the complaint because the time to file such complaint had passed.

Sligar opposed the Motion to Dismiss, contending that she, not Briscoe, had brought the adversary complaint against Fosters, and that Briscoe only signed the complaint as an accommodation to Sligar's physical disabilities. No evidence was provided as to the extent or existence of Sligar's alleged disability.

In their reply, Fosters contended that Civil Rule 11 required that either Sligar or her attorney at law sign the adversary complaint, so the complaint signed by Briscoe, her attorney-in-fact, was defective. Fosters also argued that Sligar had not provided any cogent reason for why she failed to sign her own complaint.

The bankruptcy court held a status conference and a hearing on the Motion to Dismiss on November 30, 2011. In its very short oral ruling on the Motion to Dismiss, the bankruptcy court denied the motion, finding that the adversary complaint had been filed for the benefit of Sligar. However, the court did inform Briscoe that although she had power of attorney for Sligar, she could not appear in court for Sligar or represent her; Sligar had to represent herself or get an attorney. The bankruptcy court then went on to rule that it was abstaining from hearing Sligar's tort claims against Fosters, that it was granting Sligar relief from the automatic stay to pursue her tort claims in state court, and that it was administratively closing the adversary proceeding pending a final adjudication from the state court. Later that same day, the bankruptcy court entered civil minutes stating that Fosters' Motion to Dismiss was denied for the reasons stated on

-5-

the record.

On December 14, 2011, Fosters filed a premature Notice of Appeal and motion for leave to appeal the bankruptcy court's denial of their Motion to Dismiss. The bankruptcy court then entered a written order with respect to its November 30 decision on December 16, 2011, thereby curing Fosters' Notice of Appeal. Rule 8002(a). That order makes no reference to the Motion to Dismiss or its denial.

In their motion for leave to appeal, Fosters contended that the bankruptcy court's order was tantamount to a final order because it effectively precluded them from challenging the bankruptcy court's subject matter jurisdiction over the adversary proceeding until after the state court action was adjudicated. In short, argued Fosters, if the Panel determined Briscoe lacked standing to file the adversary complaint, Sligar would be unable to object to dischargeability of the debt, and therefore the state court action could be avoided.

On February 6, 2012, a motions panel granted leave to appeal to the extent the order was interlocutory. 28 U.S.C. § 158(a)(3). However, the motions panel's concern about the finality of the bankruptcy court's order, and the basis for granting leave, centered on the issue of the bankruptcy court's decision to abstain from hearing the tort claims. That is not the issue Fosters are appealing. Their appeal is based entirely on the bankruptcy court's decision to deny their Motion to Dismiss, and that ruling does not appear anywhere in the order on appeal. The motions panel does not appear to have been aware that the order at issue failed to dispose of the Motion to Dismiss. As a result,

-6-

Fosters' appeal appears to remain interlocutory because we lack any written order from the bankruptcy court expressly addressing it. Nevertheless, we conclude that the bankruptcy court's oral ruling, although interlocutory in nature, "merged" into the written order because that order implicitly denied the Motion to Dismiss based on the court's action in administratively closing the adversary proceeding. Therefore, the order on appeal is final. See Am. Ironworks & Erectors, Inc. v. N. Am. Const. Co., 248 F.3d 892, 897-98 (9th Cir. 2001).

## II. JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(I) and (J). We have established our jurisdiction above under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court err when it denied the Motion to Dismiss?

## IV. STANDARD OF REVIEW

We review the trial court's determination of subject matter jurisdiction de novo. Nurse v. United States, 226 F.3d 996, 1000 (9th Cir. 2000).

## V. DISCUSSION

Although the bankruptcy court sua sponte decided to abstain from hearing Sligar's tort claims, granted relief from the automatic stay so she could continue with her claims in state court, and stayed and administratively closed the adversary proceeding, Fosters contend only on appeal that the bankruptcy court erred in not granting their Motion to Dismiss under Civil

-7-

Rule 12(b)(1). Therefore, we address only this issue.[4]

**A. The bankruptcy court erred when it denied the Motion to Dismiss.**

### 1. Standing and Civil Rule 12(b)(1)

Article III limits a federal court's subject matter jurisdiction by requiring that plaintiffs have standing. <u>Chandler v. State Farm Mut. Auto. Ins. Co.</u>, 598 F.3d 1115, 1122 (9th Cir. 2010). "Standing addresses whether the plaintiff is the proper party to bring the matter to the court for adjudication." <u>Id.</u> (citations omitted). Regardless of which type of standing is at issue, constitutional or prudential, both turn on whether the plaintiff can allege an "injury-in-fact" he or she suffered as a result of the defendant's alleged misconduct. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61 (1992); <u>Powers v. Ohio</u>, 499 U.S. 400, 410-11 (1991).

Because standing pertains to a federal court's subject matter jurisdiction, a motion to dismiss for lack of standing is properly brought as a motion to dismiss for lack of subject matter jurisdiction under Civil Rule 12(b)(1). <u>White v. Lee</u>, 227 F.3d 1214, 1242 (9th Cir. 2000). When faced with a Civil Rule 12(b)(1) motion, the plaintiff bears the burden of proving the existence of

---

[4] In their statement of issues presented in their opening brief, Fosters also questioned the bankruptcy court's decision to administratively close the adversary proceeding. However, they failed to brief the issue, other than stating that the proceeding should not have been closed. As a result, this issue has been abandoned. <u>City of Emeryville v. Robinson</u>, 621 F.3d 1251, 1261 (9th Cir. 2010)(appellate court in this circuit "will not review issues which are not argued specifically and distinctly in a party's opening brief."). For this same reason, Fosters have also waived any argument as to the propriety of the bankruptcy court's decision to abstain and to grant relief from stay.

-8-

the court's subject matter jurisdiction.  <u>Thompson v. McCombe</u>, 99 F.3d 352, 353 (9th Cir. 1996).

A challenge to subject matter jurisdiction may be facial or factual.  <u>White</u>, 227 F.3d at 1242.  Fosters' attack on the adversary complaint - that Briscoe lacked standing to bring it on Sligar's behalf - is a facial attack.  <u>See</u> <u>In re Beach</u>, 447 B.R. 313, 317 (Bankr. D. Idaho 2011)(assertion that debtors lack standing to prosecute their claims is a facial subject matter jurisdiction attack); <u>We Are Am./Somos Am., Coal. of Ariz. v. Maricopa Cnty. Bd. of Supervisors</u>, 809 F.Supp.2d 1084, 1089 (D. Ariz. 2011)(lack of standing is facial challenge).  When the motion constitutes a <u>facial</u> attack, the court must presume the factual allegations of the complaint to be true and construe them in the light most favorable to the plaintiff.  <u>Wolfe v. Strankman</u>, 392 F.3d 358, 362 (9th Cir. 2004).

**2.   Analysis**

It is undisputed that Briscoe has power of attorney for Sligar and is authorized to engage in many activities on Sligar's behalf, including prosecuting and/or defending "claims and litigation."  <u>See</u> CAL. PROB. CODE §§ 4450(d) and 4459.[5]  However,

---

[5] CAL. PROB. CODE § 4450(d) provides:

By executing a statutory form power of attorney with respect to a subject listed in Section 4401, the principal, except as limited or extended by the principal in the power of attorney, empowers the agent, for that subject, to do all of the following:

(d) Prosecute, defend, submit to arbitration, settle, and propose or accept a compromise with respect to, a claim existing in favor of or against the principal or intervene in litigation relating to the claim.

(continued...)

-9-

[5](...continued)

CAL. PROB. CODE § 4459 provides:

In a statutory form power of attorney, the language with respect to claims and litigation empowers the agent to do all of the following:

(a) Assert and prosecute before a court or administrative agency a claim, claim for relief, cause of action, counterclaim, cross-complaint, or offset, and defend against an individual, a legal entity, or government, including suits to recover property or other thing of value, to recover damages sustained by the principal, to eliminate or modify tax liability, or to seek an injunction, specific performance, or other relief.

(b) Bring an action to determine adverse claims, intervene in litigation, and act as amicus curiae.

(c) In connection with litigation:

(1) Procure an attachment, garnishment, libel, order of arrest, or other preliminary, provisional, or intermediate relief and use any available procedure to effect, enforce, or satisfy a judgment, order, or decree.

(2) Perform any lawful act, including acceptance of tender, offer of judgment, admission of facts, submission of a controversy on an agreed statement of facts, consent to examination before trial, and binding the principal in litigation.

(d) Submit to arbitration, settle, and propose or accept a compromise with respect to a claim or litigation.

(e) Waive the issuance and service of process upon the principal, accept service of process, appear for the principal, designate persons upon whom process directed to the principal may be served, execute and file or deliver stipulations on the principal's behalf, verify pleadings, seek appellate review, procure and give surety and indemnity bonds, contract and pay for the preparation and printing of records and briefs, receive and execute and file or deliver a consent, waiver, release, confession of judgment, satisfaction of judgment, notice, agreement, or other instrument in connection with the prosecution, settlement, or defense of a claim or litigation.

(f) Act for the principal with respect to bankruptcy or insolvency proceedings, whether voluntary or involuntary,

(continued...)

these statutes are silent as to whether Briscoe can sign a complaint as attorney-in-fact for Sligar. The bankruptcy court found that even though Briscoe signed the complaint for Sligar, the claims were really brought on Sligar's behalf, and therefore it was essentially Sligar who had filed the complaint. The court cited no authority for its decision. Fosters contend that the bankruptcy court erred in denying the Motion to Dismiss because: (1) Sligar was required to sign the adversary complaint under Civil Rule 11; and (2) Briscoe lacked standing to file it, and her capacity as Sligar's attorney-in-fact did not permit her to sign the complaint on Sligar's behalf.

To be certain, nothing prevents Sligar from pursuing her complaint on her own behalf. Johns v. Cnty. of San Diego, 114 F.3d 874, 876 (9th Cir. 1997)("While a non-attorney may appear pro se on his own behalf, he has no authority to appear as an attorney for others than himself.")(citations and internal quotation marks omitted). The question here is whether Briscoe, as Sligar's attorney-in-fact, can sign a complaint on Sligar's behalf. Case law is rather sparse on the issue of whether an attorney-in-fact can sign a complaint or otherwise appear on

[5](...continued)
concerning the principal or some other person, or with respect to a reorganization proceeding, or with respect to an assignment for the benefit of creditors, receivership, or application for the appointment of a receiver or trustee which affects an interest of the principal in property or other thing of value.

(g) Pay a judgment against the principal or a settlement made in connection with litigation and receive and conserve money or other thing of value paid in settlement of or as proceeds of a claim or litigation.

-11-

behalf of her principal. However, the courts that have addressed the matter have concluded that she cannot.

The leading California case on this issue is Drake v. Superior Court, 26 Cal. Rptr. 2d 829 (Cal. Ct. App. 1994). In Drake, petitioner Drake had power of attorney permitting him to act for his principal in matters relating to claims and litigation. Representing himself on the pleading as the attorney-in-fact for the principal, Drake attempted to obtain a temporary restraining order for his principal against her estranged husband. He also attempted to appear in court on the principal's behalf, but the court refused to let Drake make the appearance. On appeal, Drake contended that because the principal could appear in court on her own behalf, and because the statutory form power of attorney authorized him to act as agent for his principal in litigation, he could "step into the shoes" of the principal and appear for her in the litigation without a lawyer. Id. at 831. The California Court of Appeals disagreed, noting that the unlicensed practice of law is categorically prohibited in California, and the Power of Attorney Act did not provide an exception to this rule:

> Long before passage of the Power of Attorney Act, the law distinguished between an attorney in fact and an attorney at law and emphasized that a power of attorney is not a vehicle which authorizes an attorney in fact to act as an attorney at law. If the rule were otherwise, the State Bar Act could be relegated to contempt by any layman who secured from his principal an ordinary power of attorney, for the purpose of representing him in pending litigation.

Id. (internal citations and quotations omitted). Therefore, the court concluded, Drake could not "use the statutory form power of attorney as a device to practice law for his principal." Id. at

-12-

832-33. See In re Marriage of Caballero, 33 Cal. Rptr. 2d 46, 52 (Cal. Ct. App. 1994)("Despite broad statutory language of the power of attorney with respect to claims and litigation, the attorney in fact may not act as an attorney at law on behalf of his principal, even though the principal could appear in propria persona . . . ."). See Ryan v. Hyden, 2012 WL 4793116 (S.D. Cal. Oct. 9, 2012)(nonlawyer son with power of attorney for parents could not draft pleadings and pursue claims on their behalf as it constituted the unauthorized practice of law under California law; complaint dismissed); Lomax, 2011 WL 4345057, at *3-4 (uninjured father acting as attorney-in-fact for injured son lacked standing to bring complaint on behalf of son and other family members for their injuries; power of attorney did not permit father to engage in the unauthorized practice of law; motion to dismiss complaint granted); Hughes v. Laguna Honda Hosp., 2000 U.S. Dist. LEXIS 10855 (N.D. Cal. Aug. 1, 2000)(daughter with power of attorney for mother authorizing her to act on mother's behalf regarding "claims and litigation" did not allow daughter to sign and file complaint for mother's claims on her behalf; complaint dismissed without prejudice); 6A Cal. Jur. 3d, Attorneys at Law § 135 (3d ed. 2012) (one may not act as an attorney for another by virtue of a special power of attorney; power of attorney is not a vehicle for acting as an attorney at law).

Courts outside of California have reached the same result. Haynes v. Jackson, 744 A.2d 1050, 1053-54 (Me. 2000)(although state power of attorney statute does not prevent principal from granting his attorney-in-fact the power to appear pro se on the principal's behalf, the statute prohibiting the unauthorized

-13-

practice of law limits its scope; nonlawyer wife with power of attorney for husband could not sign pleadings or file appeals or appear in court for husband; motion to dismiss appeal granted); In re Riebel, 625 N.W.2d 480, 482-83 (Minn. 2001)(nonlawyer daughter with power of attorney for mother authorizing daughter to handle mother's legal matters did not allow daughter to sign pleadings or appear on mother's behalf because such actions constituted the unauthorized practice of law under Minnesota law; motion to dismiss granted); Risbeck v. Bond, 885 S.W.2d 749, 750 (Mo. App. Ct. 1994), cert. denied, 514 U.S. 1110 (1995)(reviewing state power of attorney statute and determining that an attorney-in-fact who is not an attorney at law cannot file pleadings for another or otherwise practice law; order dismissing petition affirmed); In re Estate of Friedman, 482 N.Y.S.2d 686, 687 (N.Y. Surr. Ct. 1984) (nonlawyer son with power of attorney for mother authorizing son to act for mother with respect to "claims and litigation" could not pursue proceeding to compel production of a will as it constituted the unauthorized practice of law; petition dismissed); Marin v. Kandpal, 2010 WL 3596043 (Ohio. App. Ct. Sept. 16, 2010), appeal denied, 940 N.E.2d 987 (Ohio 2011) (nonlawyer son with power of attorney for mother could not file complaint for injunctive relief on behalf of mother since it constituted practicing law without a license; dismissal affirmed).

Although Sligar argues that Briscoe did nothing more than sign the complaint for her, this is a distinction without a difference. In Hughes, the daughter signed and filed a complaint on her mother's behalf as her attorney-in-fact for injunctive

-14-

relief against the hospital that was caring for the mother.[6] 2000 U.S. Dist. LEXIS 10855, at *2. The hospital moved to dismiss because the mother herself failed to sign the complaint. Id. The daughter contended she had the right to file the complaint on her mother's behalf on account of her power of attorney, which authorized her to act for her mother with respect to "claims and litigation." Id. at *2-3. The district court disagreed, holding that California courts have determined that a statutory power of attorney form does not authorize the delegated attorney-in-fact to represent the principal in court. Id. at *4 (citing Drake, supra). Nonetheless, the court dismissed the complaint without prejudice to allow the mother to proceed with her claims either on her own behalf or with the representation of an attorney. Id. at *5.

In Lomax, the father (Thomas) signed and filed a complaint bringing claims on behalf of his son (Timothy) and other family members for injuries the son and other family members allegedly incurred during an incident involving police at Timothy's home. 2011 WL 4345057, at *1. Thomas was not involved in the incident. Defendants moved to dismiss because Thomas lacked standing to bring the action.[7] Id. at *2. The district court agreed and

---

[6] The daughter also brought claims for herself, but they were dismissed for lack of subject matter jurisdiction. That issue had no bearing on the district court's decision to dismiss the mother's claims for her failure to sign the complaint. Hughes, 2000 U.S. Dist. LEXIS 10855, at *5-6.

[7] Defendants also moved to dismiss for failure to state a claim upon which relief can be granted, but because the court determined that Thomas lacked standing to bring the action, it did not reach that issue. Lomax, 2011 WL 4345057, at *2.

-15-

dismissed the complaint for lack of standing. Id. at *3. The fact Thomas had power of attorney for Timothy did not remedy the standing issue. It also did not allow Thomas to bring the action, as the California statutory power of attorney form did not confer authority on Thomas to practice law without a license. Id. at *3-4. See also In re Marriage of Caballero, 33 Cal. Rptr. 2d at 47; Risbeck, 885 S.W.2d at 750; In re Estate of Friedman, 482 N.Y.S.2d at 687.

Lomax and Marin appear to be the only cases where defendants specifically raised the issue of standing. In the other cases, the courts simply determined that the actions of nonlawyer attorneys-in-fact signing complaints and/or appearing for their principals in court constituted the unauthorized practice of law and dismissed the complaints on that basis. Therefore, without even having to address the standing issue, the bottom line is that Briscoe, as Sligar's attorney-in-fact, could not sign the adversary complaint for Sligar. The fact Sligar signed the cover sheet does not change our decision. Accordingly, we conclude the bankruptcy court erred by not dismissing the adversary complaint.

We note that an action may be dismissed for lack of subject-matter jurisdiction, without leave to amend, when it is clear that the jurisdictional deficiency cannot be cured by amendment. May Dep't Store v. Graphic Process Co., 637 F.2d 1211, 1216 (9th Cir. 1980). However, when the defect can be cured, particularly in the case of a pro se complaint, the court should not dismiss without leave to amend. See Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000)(en banc). We further note that although Sligar was required to sign the adversary complaint

-16-

herself, the failure of a pro se litigant to sign the complaint is merely a technical defect and does not subject the complaint to dismissal. <u>Memisevich v. St. Elizabeth's Med. Ctr.</u>, 443 F.Supp.2d 276, 283 (N.D.N.Y. 2006) (dismissal of pro se pleading for failure to sign is inappropriate due to the great flexibility accorded pro se litigants)(string citation omitted). "A bungled signature on a pleading is merely a technical defect and not a substantive violation of Rule 11, warranting the voiding of the complaint." <u>Edwards v. Groner</u>, 116 F.R.D. 578, 579 (D.V.I. 1987)(citing <u>Covington v. Cole</u>, 528 F.2d 1365, 1369-70 & n.7 (5th Cir. 1976); <u>Grant v. Morgan Guar. Trust Co. of N.Y.</u>, 638 F.Supp. 1528, 1531-32 n.6 (S.D.N.Y. 1986); <u>Thiem v. Hertz Corp.</u>, 732 F.2d 1559, 1562-63 (11th Cir. 1984); and <u>Becks v. Turner</u>, 68 F.R.D. 466, 467 (E.D.N.Y. 1975)).

Despite Fosters' arguments to the contrary, we see no reason why Sligar should not be allowed to amend the adversary complaint with her signature. Alternatively, she could retain an attorney to represent her.

## VI. CONCLUSION

Because the bankruptcy court erred by not granting the Motion to Dismiss, and because Fosters have not appealed any other portions of the order on appeal, we VACATE in part only the court's decision with respect to the Motion to Dismiss and REMAND that matter with instruction that the bankruptcy court give further consideration as to whether Sligar's complaint can be amended, in the event the adversary proceeding is reopened to determine the issue of the nondischargeability of Sligar's debt and/or Fosters' discharge. As for the other matters decided by

-17-

the bankruptcy court in the order on appeal - abstention, stay relief, and administrative closure of the adversary proceeding - we offer no opinion.